Karen A. Confoy
**STERNS & WEINROTH, P.C.**
50 West State Street
Suite 1400
P.O. Box 1298
Trenton, New Jersey 08607-1298
T:  (609) 392-2100
F:  (609) 392-7956

*Attorney for Plaintiffs The McGraw-Hill*
*Companies, Inc., Pearson Education, Inc.,*
*Cengage Learning, Inc., and John*
*Wiley & Sons, Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOHN WILEY & SONS, INC., THE MCGRAW-HILL COMPANIES, INC., PEARSON EDUCATION, INC., and, CENGAGE LEARNING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EDUARDO RIVADENEYRA; THERESE HODDY; THOMAS HODDY; SALLY WHITE-RIVADENEYRA-CARDENAS; SERGIO RIVADENEYRA; MARIO FIGALLO RIVADENEYRA; INVERSIONES LINARIAS; FIRST CLASS CLUB, SAC; INTER-EXPRESS FORWARDING, INC.; AMERITEXT; LIBRO TEXTO; PHOENIX EXPRESS; ACADEMIC EXPRESS; SINCLAIR BARGAIN BOOKS; QUALITY BOOKS; S&S RESOURCES; and DOES 1-10, <br><br> Defendants. | Civil Action No. _____ <br><br> Document Filed Electronically <br><br> COMPLAINT <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs John Wiley & Sons, Inc., the McGraw-Hill Companies, Inc., Pearson Education, Inc., and Cengage Learning, Inc. (collectively, "Plaintiffs"), for their Complaint against Eduardo Rivadeneyra, Therese Hoddy, Thomas Hoddy, Sally White-Rivadeneyra-Cardenas, Sergio Rivadeneyra, Mario Figallo Rivadeneyra, Inversiones Linarias, First Class Club, SAC, Inter-Express Forwarding, Inc., Ameritext; Libro Texto, Phoenix Express, Academic Express, Sinclair Bargain Books, Quality Books, and S&S Resources (collectively, "Defendants"), allege, on personal knowledge as to matters relating to themselves, and on information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.      Plaintiffs are among the leading educational publishers in the world.  They provide a comprehensive range of traditional and digital educational content and tools to professionals and students of all ages.

2.      Defendants, through their mastermind, Defendant Eduardo Rivadeneyra, are engaged in a massive fraud to obtain textbooks from the Plaintiff Publishers at dramatically discounted pricing that is otherwise only made available to individuals and companies that distribute textbooks within developing nations.  Defendants, however, obtain the books under false pretenses, wash them through a series of sham companies and distribute them within the United States for a massive profit.  Defendants are a group of individuals and entities based in the United States and around the world who operate through a complex and shadowy network of businesses.  This enterprise is masterminded by Defendant Eduardo Rivadeneyra, who by assuming fake identities, using relatives and friends, and setting up sham companies, defraud

Plaintiffs into selling them books at prices they would not otherwise sell to him. All of Defendants materially participate in the illegal operation, which they engage in jointly.

3.      In addition to obtaining books through fraud from Plaintiff Publishers, Defendants also purchase, import and distribute counterfeit and otherwise infringing textbooks in the United States. These actions violate Plaintiffs' copyrights and trademarks resulting in harm to Plaintiffs and consumers.

**THE PARTIES**

**Plaintiffs**

4.      Plaintiff John Wiley & Sons, Inc. ("Wiley"), is a New York corporation with its principal place of business at 111 River Street, Hoboken, New Jersey. Wiley serves undergraduate, graduate, and advanced placement students, and lifelong learners throughout the world. Wiley publishes educational materials in print and electronic media, notably through WileyPLUS, an integrated online suite of teaching and learning resources. Wiley's programs target the sciences, engineering, computer science, mathematics, business and accounting, statistics, geography, hospitality and the culinary arts, education, psychology, and modern languages.

5.      Plaintiff The McGraw-Hill Companies, Inc. ("McGraw-Hill") is a New York corporation with its principal place of business at 1221 Avenue of the Americas, New York, New York 10020, and offices in New Jersey. McGraw-Hill is a global publisher and lifelong learning partner to students and teachers of all kinds and addresses virtually every aspect of the education market from prekindergarten through professional learning, using traditional materials, online learning and multimedia tools. McGraw-Hill is also a leading provider of reference and trade publishing for the medical, business, engineering and other professions.

6.      Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation with its principal place of business at One Lake Street, Upper Saddle River, New Jersey 07458.  Pearson is a world-renowned publisher of educational books and multimedia materials in all subject areas and grade levels, operating under numerous imprints, with a rich educational and literary heritage.  With well-known brands such as Pearson, Prentice Hall, Pearson Longman, Pearson Scott Foresman, Pearson Addison Wesley, Pearson NCS, and many others, Pearson provides quality content, assessment tools, and educational services in all available media.

7.      Plaintiff Cengage Learning, Inc. ("Cengage"), formerly Thomson Learning, Inc., is a Delaware corporation with its principal place of business located at 200 First Stamford Place, 4th Floor, Stamford, Connecticut 06902.  Cengage is among the world's largest providers of tailored learning solutions.  In the academic marketplace, Cengage serves secondary, post-secondary and graduate-level students, teachers, and learning institutions in both traditional and distance learning environments.  Cengage products and services are sold throughout the world, through direct channels and via a worldwide network of distributors.

**Defendants**

8.      Defendant Eduardo Rivadeneyra is an individual who resides at 7210 Lake Circle Drive, Apartment 208, Margate, Florida 33063.

9.      Defendant Therese Hoddy is an individual residing at 7210 Lake Circle Drive, Apartment 208, Margate, Florida 33063.  Hoddy is the wife of Eduardo Rivadeneyra and an owner/operator of Defendants Sinclair Bargain Books, Quality Books, Academic Express, among other businesses.

10.      Defendant Thomas Hoddy is an individual residing at 4569 NW 17th Terrace, Tamarac, FL 33309.  Thomas Hoddy is the brother of Therese Hoddy and the operator of

Defendants Inter-Express Forwarding, Inc. and Phoenix Express.

11.    Defendant Sally White Rivadeneyra-Cardenas is an individual residing at 263 Molino Avenue, Apt. #6, Long Beach, CA 90803. Rivadeneyra-Cardenas is the sister-in-law of Defendant Eduardo Rivadeneyra, and is an owner and/or operator of Defendant S&S Resources.

12.    Defendant Sergio Rivadeneyra is an individual residing at 263 Molino Avenue, Apt. #6, Long Beach, CA 90803. Sergio Rivadeneyra is the brother of Defendant Eduardo Rivadeneyra, and an owner and/or operator of Defendant S&S Resources.

13.    Defendant Mario Figallo Rivadeneyra ("Figallo Rivadeneyra") is an individual residing in Peru, with an address at Calle Carlos Villaran #249, La Victoria, Lima, Peru. Figallo Rivadeneyra is the cousin of Defendant Eduardo Rivadeneyra and the owner and/or operator of Defendant First Class Club SAC.

14.    Defendant Inversiones Linarias is a business organized under the laws of Peru. Inversiones Linarias is owned and/or operated by Defendant Therese Hoddy. The company operates out of the residence of Ms. Hoddy and Eduardo Rivadeneyra.

15.    First Class Club, SAC ("FCC Peru") is a business organized under the laws of Peru with its principal place of business at Calle Carlos Villaran #249, La Victoria, Lima, Peru. FCC SAC is owned by Defendants Figallo Rivadeneyra and Eduardo Rivadeneyra.

16.    Defendant Inter-Express Forwarding, Inc. ("Inter-Express Forwarding") is a Delaware corporation with its principal place of business at 6910 NW 46th Street, Miami, FL 33166. Inter-Express Forwarding is owned by Defendant Eduardo Rivadeneyra.

17.    Defendant Ameritext S.A.C. is a Delaware corporation with is principal place of business at Av. Los Quechuas 1061 - 1065 Salamanca ATE, Lima, PERU. Ameritext is owned and/or operated by Defendant Eduardo Rivadeneyra.

18.     Defendant Libro Texto is a Delaware corporation with is principal place of business at Av. Los Quechuas 1061 - 1065 Salamanca ATE, Lima, PERU.  Libro Texto is owned and/or operated by Defendant Eduardo Rivadeneyra.

19.     Defendant Phoenix Express is a Florida corporation with a principal place of business at 6760 Arrowroot Drive, Jacksonville, FL 32244.  Phoenix Express is owned and/or operated by Defendant Therese Hoddy and/or Thomas Hoddy.

20.     Defendant Academic Express is a Delaware corporation with a registered agent at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, DE 19801.  Academic Express is owned and/or operated by Defendant Therese Hoddy.

21.     Defendant Sinclair Bargain Books is a Florida corporation that is owned and/or operated by Defendant Therese Hoddy.  It operates out of the residence of Therese Hoddy and Eduardo Rivadeneyra.

22.     Defendant Quality Books is a Delaware corporation with a registered agent at Agents and Corporations, Inc., 1201 Orange Street, Suite 600, One Commerce Center, Wilmington, DE 19801.  Quality Books is owned and/or operated by Defendant Therese Hoddy.

23.     Defendant S&S Resources is California corporation with a principal place of business at 263 Molino Avenue, Apt. #6, Long Beach, CA 90803.  S&S Resources is owned and/or operated by Defendants Rivadeneyra-Cardenas and Sergio Rivadeneyra.

24.     Defendants Does 1 through 10 are each fictitious names used to refer to certain individuals or entities whose true identities are not currently known to Plaintiffs.  Once Plaintiffs ascertain their identities, Plaintiffs will amend the Complaint to include such individuals or entities as named defendants.  The Doe Defendants are the individuals and/or entities that

financially benefit from the fraud and/or infringement of Plaintiffs' copyrighted works and fail to exercise their right and ability to control the infringement, and/or that have knowledge of the infringement of Plaintiffs' copyrighted and trademarked works and encourage or materially contribute to it. Each Doe Defendant acted in concert with, as agent or representative for, or at the request or on the behalf of the named Defendants. Thus, the allegations of wrongful conduct by Defendants set forth herein are also applicable to and alleged against each Doe Defendant.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, based on federal question jurisdiction, and the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

26. This is an action arising under the Copyright Act, 17 U.S.C. § 101, et al. and under the Lanham Act, 15 U.S.C. § 1114.

27. Venue is proper in this district under 28 U.S.C. §§ 1391. Jurisdiction in this district is proper because Defendants, engaged in the fraudulent conduct complained of herein in this district, and entered into commercial transactions with Plaintiffs in this district. Plaintiffs suffered their injury in this district, where Defendants intended for it to occur.

## GENERAL ALLEGATIONS

Plaintiffs' Publication of Textbooks

28. Plaintiffs each publish a variety of educational textbooks, among other works. Their textbooks are used worldwide at educational institutions and in other learning environments. Their textbooks are widely available in the market place, including in retail and online bookstores, for rental or purchase.

29. Plaintiffs each invest substantial sums of money, time, expertise, and talent to

develop their textbooks and subsequent editions of those textbooks. Each year, they incur substantial costs for author royalties or other costs of content creation or licensing, copyediting and proofreading, and for typesetting, layout, printing, binding, distribution, and promotion, and for support of their editorial offices.

30.     Plaintiffs each invest significant resources annually in the worldwide advertisement and promotion of their goods and services. Plaintiffs and/or their predecessors have invested decades of effort in building a reputation of superior quality in the publishing industry.

31.     Plaintiffs publish International Editions of their textbooks that are intended only for sale in geographic markets outside of the United States. Some International Editions are manufactured abroad while others may be manufactured within the United States. International Edition covers are generally marked with a conspicuous notice indicating that the textbook is authorized for sale only in a particular country, or prohibited for sale in specified geographic regions. The distribution and/or sale of International Edition textbooks in North America is typically never authorized by Plaintiffs.

32.     Plaintiffs recognize that students around the world should have access to first-class educational materials. In order to provide this opportunity to students in developing countries, Plaintiffs sell International Editions at lower price points than they do the U.S. Editions sold domestically. In specific geographic locations, typically where International Editions may not be available, Plaintiffs also sell on occasion certain U.S. Editions at steeply discounted prices to make these textbooks available for sale in those countries. These U.S. Editions may sometimes be labeled or otherwise marked as not-for-sale in the United States and would be sold only with the representation that they would be distributed only in the specified

foreign territories ("Overseas USEs").  Re-sale of International Editions and Overseas USEs in the United States undercuts sales of U.S. Editions that are intended for sale in the United States. For this reason, when International Editions and Overseas USEs are improperly sold in the United States, it harms Plaintiffs.

33.     The revenues from Plaintiffs' sales of textbooks are important to their financial health.  Among other things, a substantial decline in revenue from textbook sales could cause Plaintiffs to cease publication and/or reinvestment in one or more deserving books.  This would have an adverse impact on the creation of new works, on scholarly endeavor, and on scientific and educational progress by making it more difficult to publish deserving works.  Both publishers and authors alike are deprived of income when their books are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.

34.     Plaintiffs have each duly registered with the United States Copyright Office their copyright in those works described on Exhibit A and Exhibit C (hereinafter, "Plaintiffs' Authentic Works"), among others.  Plaintiffs Authentic Works bear trademarks and service marks as set forth on Exhibit B, among others (hereinafter, "Plaintiffs' Marks"), which Plaintiffs have duly registered on the Principal Register of the United States Patent and Trademark Office. Plaintiffs' Marks are distinctive and arbitrary and in some cases are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  Plaintiffs and /or their predecessors invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs' Marks.

## DEFENDANTS' BUSINESS OPERATIONS

35.     Defendants are in the business of buying and selling educational textbooks.

9

Defendant Eduardo Rivadeneyra ("ER"), in particular, is well versed in the business of infringing on Plaintiffs' rights, having previously operated Los Delfines, a "book store" in San Juan, Puerto Rico, that publishers previously sued for copyright infringement. Among their illegal activities, Defendants buy Overseas USEs and International Editions from Plaintiffs at discounted prices, which are secured through the deception of serving foreign markets, and then sell them at a profit to distributors in the United States. This practice undercuts Plaintiffs' legitimate sales in the United States and thwarts the purpose of providing developing countries with access to Plaintiffs' books at discounted prices.

36.     Having been caught once before, ER sets up sham companies to hide the fact that he is the customer buying the books from Plaintiffs. He often sets these companies up in the names of his relatives and close acquaintances. Often, he creates and uses email addresses in other peoples' names to give the outward appearance that somebody else is conducting the companies' business. ER will instruct third parties with whom he is doing business to direct their communications to his relatives or friends, even though he is, in fact, the one communicating with them.

37.     The individual Defendants involved in these sham transactions include Defendants ER, Therese Hoddy, Tom Hoddy, and Mario Figallo Rivadeneyra. The companies include Defendants Inversiones Linarias, FCC Peru, Inter-Express, Ameritext, Libro Texto, Phoenix Express, Academic Express, Sinclair Bargain Books, and Quality Books, each of which has been directed, established, formed, coached, managed and/or owned by ER, either directly or through the other individual Defendants (collectively, with the individuals, hereinafter referred to as the "Rivadeneyra Defendants"). Specifically, ER oversees and manages the day-to-day business of the Rivadeneyra Defendants including, in particular, the fraudulent, infringing and illegal activity described herein. Among other things, he directs the deceptive purchase from Plaintiffs at deeply-discounted, foreign-market prices, and the subsequent sale in the United States of those textbooks, including Plaintiffs' Authentic Works. Eduardo does this in order to make money through the various companies.

38.     ER conducts business through the Rivadeneyra Defendants, all of which are created in order to hide and protect his identity and/or the nature of his sales.  ER uses various corporate forms, including in particular Defendants, as an alter ego through which he commits the infringing and illegal behavior described herein.

## DEFENDANTS' FRAUD AGAINST PLAINTIFFS

39.     The Rivadeneyra Defendants have made numerous false representations to Plaintiffs in order to induce Plaintiffs to sell them Overseas USEs and International Editions at discount prices.  The Rivadeneyra Defendants represented to Plaintiffs that they are businesses, like Defendant Ameritext located in Peru and Sinclair Bargain Books located in Jamaica, that are purchasing books for distribution to customers in those countries.  As a result of those representations, the Rivadeneyra Defendants are able to deceive Plaintiffs into selling International Editions or Overseas USEs at prices that are substantially lower than the Plaintiffs would be willing to sell to distributors intended for distribution in the United States.

40.     At the time the Rivadeneyra Defendants represented to Plaintiffs that they are foreign businesses and/or that they will ship the textbooks to the specified foreign countries and sell them to customers in the foreign countries, they knew that the representations were false and that they had no intention of selling the books to customers overseas.  The Rivadeneyra Defendants made these false statements in order to induce Plaintiffs into selling them International Editions and Overseas USEs at deeply discounted prices.  Plaintiffs relied on the representations of the Rivadeneyra Defendants in selling them these books at deeply discounted prices and would not have done so had they known that the books would be sold and/or distributed in the United States.

41.     The Rivadeneyra Defendants in some cases purchase Overseas USEs and

International Editions from Plaintiffs and sold them directly to customers in the United States.  In other cases, the Rivadeneyra Defendants purport to sell them to "overseas" customers, who then in turn sell them to customers in the United States.  These "overseas" customers, however, are in fact the Rivadeneyra Defendants or are owned or controlled by Defendants.  In addition, the Overseas USEs and International Editions are not shipped out of the United States but, because the Rivadeneyra Defendants own the shipping and freight forwarding companies, Inter-Express and Phoenix Express, direct that they be shipped to customers in the United States instead.  The Rivadeneyra Defendants may also issue false shipping documents and invoices to create the appearance that overseas sales have taken place, when in fact the books have never left the country.

42.      Because the Rivadeneyra Defendants engage in these activities surreptitiously, Plaintiffs are unaware of all of the instances in which this has occurred.  Plaintiffs are aware of the following specific instances of fraud, which are representative of the larger conspiracy and course of conduct by the Rivadeneyra Defendants:

a.      On or about May 9, 2011, Defendant ER falsely introduced himself to Plaintiff Cengage as a man by the name of Richard Sinclair of "Sinclair Bargain Books," who owned a "chain of stores here in Jamaica."  In an elaborate story, Defendant ER told Cengage that he "has been successfully running a family business for the last 50 years with over 20 stores or locations through out Jamaica" and that in the "last couple of years, we have been selling Elementary, High School and University Textbooks to students and colleges across Jamaica and the Caribbean."  Through subsequent emails, Defendant ER states that he was "stocking up for our next semester and/or school term" and that his customers and institutions in Jamaica were requesting specific textbooks.

12

These statements were false because Defendant ER was not Richard Sinclair and, at the time he made these statements, had no intention of supplying customers in Jamaica. As a result of these false representations, Plaintiff Cengage sold in excess of $160,000 of Overseas USEs to Defendant Sinclair Bargain Books. These sales include approximately $75,000 of Overseas USEs in December 2011, which were sold not to customers in Jamaica, but to Defendant Ameritext, who, with the participation of Defendants Thomas and Therese Hoddy, sold to South Eastern Books ("SEB"), a company located in Murray, Kentucky, and to other customers in the United States.

b.     On or about May 14, 2012, Defendant ER, in conjunction with Defendant Figallo Rivadeneyra, represented to Plaintiff Wiley by letter that "The final destination of all Wiley textbooks ordered by First Class Peru is Peru. We agree to comply with Wiley terms and conditions. All books sent to our freight forwarder in Florida are shipped to FCC in Peru." As a result of these false representations, Wiley sold Overseas USEs in excess of $740,000 at significant discounts to Defendant FCC SAC to be sold in Peru. These textbooks, however, were never shipped to Peru, but were sold to Defendant Inversiones Linares, which sold them to Defendant Academic Express and shipped by Defendant Inter-Express Forwarding to customers in Hong Kong.

c.     On or about April 2, 2011, Defendants ER and Therese Hoddy falsely represented to Plaintiff McGraw-Hill that they were "Richard Sinclair," doing business as "Sinclair Bargain Books." In an email to McGraw-Hill, ER, falsely pretended to be "Richie Sinclair" and informed it that they would not be operating any longer under "Dreamriver Productions" and instead have set up a new company named "Sinclair Bargain Books." Defendant ER advised McGraw-Hill, again as Richard Sinclair, that they still needed to "register as an importer here in

Jamaica as Sinclair Bargain Books."

On or about April 16, 2012, Defendants ER and Therese Hoddy continued to perpetuate the fraud by responding to questions posed by McGraw-Hill that they are a chain of family stores with 14 retail outlets out of Jamaica and that the customers they are targeting are universities in Jamaica, Trinidad and Barbados. In May 2012, Defendant ER, again as "Richard Sinclair," falsely represented to McGraw-Hill that he was handing off the book sales and distribution of his "family business" to his colleague "Terrie Hoddy," who would continue doing business in the name of Jamaica Bargain Books, but would retain the same shipper, Defendant Inter-Express Forwarding. McGraw-Hill relied on these misrepresentations and sold books to Defendant ER, Therese Hoddy, Dream River Productions, and Sinclair Bargain Books at deep discounts for sale in Jamaica.

d.      On or about July 16, 2011, Defendant ER advised McGraw-Hill that it was merging Defendant Libro Texto S.R.L. with Defendant FCC Peru and that they would be undertaking a "massive regional project" in Peru that could be backed up by the Peruvian government. As a result, ER asked for an additional discount. In November 2011, through a series of emails, the Rivadeneyra Defendants further represented to McGraw-Hill that it wanted to purchase Overseas USEs for its customers in Peru, Ecuador, Argentina, Chile and the surrounding countries. Instead of selling in those countries, the Rivadeneyra Defendants sold the Overseas USEs to Defendant Quality Books who, in turn, sold them to SEB in Murray, Kentucky and to other customers in the United States. On or about August 8, 2012, the Rivadeneyra Defendants falsely informed McGraw-Hill that they had sold those books "down here in Peru" and requested more of the same titles and at the same discount to "replenish" their supply. As a result of these and other misrepresentations, McGraw-Hill sold Overseas USEs at discounted

14

prices to FCC SAC.

43.     In each of the instances above, Defendants made false statements of fact that they knew, or had reason to believe, were false.  Defendants made the false statement in order to induce Plaintiffs to sell them Overseas USEs or International Editions at deeply discounted prices.  Plaintiffs reasonably relied on these statements to sell Overseas USEs and International Editions to Defendants at those prices, which they would not have had they known either that Defendants were in fact ER and/or that the Rivadeneyra Defendants would sell those books in the United States.

44.     As part of the scheme, Defendant ER would have the Publishers ship the books to a freight forwarder of his choosing, often one that he owns and operates.  Then, while the books are sitting in a warehouse at the freight forwarder in the United States, Defendant ER would "sell" the books from the companies that had purchased them, to a company that his wife allegedly owned.  Sometimes he would sell the books multiple times, through multiple companies, all while they sit in the warehouse at the freight forwarder.  The companies to which he sold the books were companies that were similarly within his control.  Those companies would then sell the Overseas USEs or International Editions to companies in the United States, as though they were legitimate, authorized textbooks.

45.     In a number of these fraudulent representations, ER represented to be Richard Sinclair.  Mr. Sinclair, in fact, objected to and sent ER a letter demanding that ER cease and desist from representing himself as Sinclair.

## IMPORTATION AND SALE OF COUNTERFEIT BOOKS

46.     In addition to the fraud perpetuated by the Rivadeneyra Defendants, Defendants ER, Therese Hoddy, S & S Resources, Sally White-Rivadeneyra-Cardenas, and Sergio

Rivadeneyra (hereinafter, "Counterfeiting Defendants) have also purchased, sold, and/or distributed counterfeit copies of Plaintiffs' Authentic Works bearing Plaintiffs' Marks (hereinafter "Pirated Books).  In purchasing these Pirated Books, Counterfeiting Defendants deliberately evaded legitimate sources of the products in question, and they chose instead to obtain Pirated Books, for the purpose of illegally distributing and reselling such copies to consumers in the United States and elsewhere, in violation of Plaintiffs' intellectual property rights.

47.     Counterfeiting Defendants paid materially less than they would have had they purchased the books directly from the respective publishers or from a legitimate wholesaler.

48.     At the time that Counterfeiting Defendants purchased the Pirated Books, Defendants knew or should have known that they were infringing.  But instead of exercising any degree of care, Counterfeiting Defendants distributed them as though they were legitimate to a variety of United States wholesalers, knowing they would be further distributed throughout the United States.

49.     Counterfeiting Defendants knowingly supervised and controlled the distribution of the Pirated Books, and had a direct financial interest in, and stood to gain a direct financial benefit from their deliberately infringing activity.

50.     In engaging in the illegal conduct alleged above, in addition to directly organizing and effectuating such infringing activities, Counterfeiting Defendants also personally induced, caused, and materially contributed to infringing conduct by others, including the wholesalers to whom they sold the Pirated Books.

51.     The Pirated Books are inferior to Plaintiffs' Authentic Works.  Among other differences, the binding, glue, paper, color and printing are often different and inferior. Based on the use of Plaintiffs' trademarks, actual and prospective purchasers are likely to believe that the Pirated Books are Plaintiffs' authentic publications.  Because the Pirated Books are inferior, this weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  It further injures Plaintiffs' business reputations by causing their trademarks and the goodwill associated with them to be

confused or mistakenly associated with a group or series of textbooks of lesser quality, as alleged above.

52.     Among the counterfeit copies of Plaintiffs' Authentic Works that the Counterfeiting Defendants have acquired from these sources, and others, are those works that are listed on Exhibit A.  This list is a representative sample and is likely not complete because Defendants' infringing activities occur behind closed doors.  For that same reason, Plaintiffs are not aware of all of the different sources from which Counterfeiting Defendants obtain Pirated Books.

53.     Counterfeiting Defendants have distributed the Pirated Books by selling them to distributors in the United States, including but not limited to, Sterling Corporation.

54.     When Counterfeiting Defendants sell textbooks to distributors, they often represent and warrant to the distributors that the books are authentic and legitimate.  These representations and warranties, however, are totally hollow and worthless.  Not only do Counterfeiting Defendants fail to conduct the necessary due diligence to determine if the books are authentic and legitimate, they, in fact, have many reasons to believe that the books are counterfeit.

## IMPORTATION AND SALE OF BOOKS MANUFACTURED OVERSEAS

55.     In addition to the above, the Rivadeneyra Defendants have imported, sold and/or distributed versions of Plaintiffs' Authentic Works that are versions made outside of the United States, and which are not permitted to be sold in the United States without authorization.   In order to hide the fact that they are selling such foreign manufactured books, the Rivadeneyra Defendants often remove or use stickers to cover up the markings on the textbooks that make clear that they are not to be sold in the United States.

56.     In selling these textbooks that are manufactured outside the United States, the Rivadeneyra Defendants are infringing on certain of Plaintiffs' copyrights.

57.     Each of the individual Rivadeneyra Defendants has directly participated in this

massive scheme.

58.     Among the infringing copies of Plaintiffs Authentic Works that are manufactured outside the United States and are being sold by Defendants are those listed on Exhibit C.

## FIRST CLAIM FOR RELIEF
### Copyright Infringement Under 17 U.S.C. §§ 101 *et seq.*
### (Against All Defendants)

59.     Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

60.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they have been duly registered by Plaintiffs with the United States Copyright Office and published by Plaintiffs in strict conformity with the Copyright Act and all laws governing copyrights.

61.     At all relevant times, Plaintiffs have been and still are the owners or exclusive licensees of all rights, title and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed or otherwise transferred to any of the Defendants.

62.     Beginning on an unknown date and continuing, at least, into 2012, Defendants, with knowledge of Plaintiffs' duly registered copyrights in the Authentic Works, infringed Plaintiffs' copyrights by, among other things, deliberately purchasing, manufacturing, importing, distributing, and reselling the infringing copies of Plaintiffs' Authentic Works for profit, without the permission, license or consent of Plaintiffs.

63.     Defendants also have infringed Plaintiffs' exclusive rights to reproduce, import, distribute and to authorize reproduction, importation and distribution of the infringing copies of Plaintiffs' Authentic Works to the public by sale or other transfer of ownership, by, among other things, importing the infringing copies of Plaintiffs' Authentic Works, and possibly

18

elsewhere, from sources whose products Defendants knew or should have known were unauthorized and illegal, or alternatively, by securing the manufacture of the infringing copies of Plaintiffs' Authentic Works and by distributing them in the United States without the permission, license or consent of Plaintiffs.

64.     Defendants undertook these actions both individually and jointly.

65.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

66.     Upon information and belief, Defendants' unlawful conduct, as set forth above, was deliberate, intentional, knowing, malicious and willful.

67.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless Defendants are restrained by this Court from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.

## SECOND CLAIM FOR RELIEF
### Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114
### (Against Counterfeiting Defendants)

68.     Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

69.     This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for infringement of trademarks registered to Plaintiffs in the United States Patent and Trademark Office.

70.     Without Plaintiffs' authorization, Counterfeiting Defendants are producing, marketing, offering for sale, and selling in commerce textbooks under Plaintiffs' Marks.

71.     Counterfeiting Defendants' aforesaid uses of Plaintiffs' Marks have caused and are likely to continue to cause confusion, mistake, and/or deception as to the source or origin of Counterfeiting Defendants' goods, in that the public, and others, are likely to believe that Counterfeiting Defendants' goods are provided by, sponsored by, approved by, licensed by,

affiliated with, or in some other way legitimately connected with Plaintiffs, all to Plaintiffs'
irreparable harm.

72.     Plaintiffs are informed and believe, and on that basis allege, that Counterfeiting
Defendants will continue to use Plaintiffs' Marks unless enjoined.

73.     Counterfeiting Defendants, by their above-enumerated acts, willfully and
knowingly have violated and infringed Plaintiffs' rights in and to the federally-registered
Marks, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Counterfeiting
Defendants threaten to further violate and infringe Plaintiffs' said rights.

74.     Counterfeiting Defendants' aforesaid conduct was intentional, or deliberately
reckless, and without foundation in law.

**THIRD CLAIM FOR RELIEF**
**Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)**
**(Against Counterfeiting Defendants)**

75.     Plaintiffs reallege and incorporate herein by reference the allegations of the
previous paragraphs as though fully set forth herein.

76.     Counterfeiting Defendants are infringing the federally registered Plaintiffs'
Marks though their use in commerce of a reproduction, counterfeit, copy, or colorable imitation
of Plaintiffs' Marks, in connection with the sale, offering for sale, marketing, distributing, or
advertising of textbooks, with such use being likely to cause confusion, to cause mistake, or to
deceive the public.

77.     Counterfeiting Defendants are intentionally using Plaintiffs' Marks on
unauthorized product.  Counterfeiting Defendants are intentionally infringing upon Plaintiffs'
trademark rights in order to further their own business enterprises.

78.     The counterfeiting by Counterfeiting Defendants of Plaintiffs' Marks has caused
and will continue to cause serious and irreparable injury to the reputation and goodwill of
Plaintiffs for which Plaintiffs have no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF
### Trafficking in Counterfeit Documentation or Labels Under 18 U.S.C. § 2318
### (Against Counterfeiting Defendants)

79.     Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

80.     Counterfeiting Defendants have knowingly and willfully trafficked into the United States counterfeit documentation and labels affixed to the literary works in the form of infringing copies of Plaintiffs' Authentic Works.

81.     Counterfeiting Defendants knowingly used the United States mail/postal service or a facility of interstate or foreign commerce to traffic in counterfeit documentation and labels affixed to the infringing copies of Plaintiffs' Authentic Works.

82.     Counterfeiting Defendants have been using counterfeit labels or counterfeited documentation or packaging, and continue to use counterfeits of Plaintiffs' copyrighted label, documentation, and packaging in commerce, in connection with their sale and distribution of counterfeit textbooks, including counterfeit copies of the Authorized Works.

83.     Plaintiffs' labels, documentation or packaging, which are registered with the United States Copyright Office and the United States Patent and Trademark Office, are substantially similar to the counterfeit labels, documentation or packaging used by the Counterfeiting Defendants in connection with the infringing copies of Plaintiffs' Authentic Works, and appear to be genuine, but are not.

## FIFTH CLAIM FOR RELIEF
### Illegal Importation of Goods Bearing Infringing United States Trademarks or Names
### Under 15 U.S.C. § 1124 and 19 U.S.C. § 1526
### (Against Counterfeiting Defendants)

84.     Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

85.     Counterfeiting Defendants have knowingly imported counterfeit copies, of foreign manufacture, of Plaintiffs' Authentic Works, which imitate the name of Plaintiffs'

manufacturer and copy Plaintiffs' Authentic Works, including their trademarks, which are registered with the United States Copyright Office and the United States Patent and Trademark Office respectively.

86.     By importing counterfeit copies of Plaintiffs' Authentic Works, Counterfeiting Defendants have willfully used counterfeit trademarks which cause confusion as to the origin, sponsorship, and/or approval of the pirated books, and which are calculated to induce the public to believe that the pirated books were authentically manufactured.

87.     Plaintiffs manufacture some of their Authentic Works in the United States.  On information and belief, Counterfeiting Defendants are importing counterfeit copies of said Authentic Works claiming the Pirated Books were authentically manufactured in the United States when in fact they were manufactured overseas.

## SIXTH CLAIM FOR RELIEF
### Trademark Dilution In Violation of 15 U.S.C. § 1125(c)
### (Against Counterfeiting Defendants)

88.     Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

89.     Plaintiffs' Marks are famous marks entitled to protection from dilution under 15 U.S.C. § 1125(c).  Moreover, Plaintiffs have taken reasonable steps to preserve the integrity and image of their Marks.

90.     Counterfeiting Defendants' unauthorized, intentional and intended use of Plaintiffs' Marks in commerce has led to the dilution of the distinctive quality of Plaintiffs' Marks including, but not limited to, the blurring and tarnishing of Plaintiffs' Marks, in violation of 15 U.S.C. § 1125(c).  Counterfeiting Defendants' actions have lessened or have the tendency to lessen the capacity of consumers to distinguish the goods and services of Plaintiffs.

91.     Counterfeiting Defendants intentionally and willfully traded upon Plaintiffs' renowned reputation and goodwill, and willfully sought to dilute the famous Plaintiffs' Marks. Defendants' conduct is intentionally fraudulent, malicious, willful, and wanton.

92.    Plaintiffs have no adequate remedy at law to compensate them for the continued and irreparable harm they will suffer if Counterfeiting Defendants' acts are allowed to continue.

**SEVENTH CLAIM FOR RELIEF**
**Federal Unfair Competition And False Designation of Origin**
**In Violation of 15 U.S.C. § 1125(a)**
**(Against Counterfeiting Defendants)**

93.    Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

94.    Counterfeiting Defendants' acts and conduct constitute a false designation of origin, and are likely to cause confusion or mistake, or deceive as to affiliation, connection, or association of Counterfeiting Defendants with Plaintiffs, and as to origin, sponsorship, and/or approval of such products by Plaintiffs.

95.    Counterfeiting Defendants' use in commerce of Plaintiffs' Marks, on or in connection with their products, constitutes a false designation or origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

96.    Counterfeiting Defendants' unauthorized use of Plaintiffs' Marks on or in connection with their business and/or its products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs. Plaintiffs are informed and believe, and on that basis allege, that Counterfeiting Defendants willfully used and continue to use Plaintiffs' Marks with the intent to confuse, mislead, or deceive consumers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the products, and with the intent to trade on the reputation and goodwill of Plaintiffs' Marks that were acquired by each of the respective Plaintiffs.

97.    As a direct and proximate result of Counterfeiting Defendants' conduct, Plaintiffs have suffered irreparable harm to the valuable Plaintiffs' Marks. Unless Counterfeiting Defendants are restrained from further infringement of Plaintiffs' Marks, Plaintiffs will continue to be irreparably harmed.

98.     Counterfeiting Defendants' acts of unfair competition, false designation, description and representation are causing Plaintiffs irreparable injury.  Counterfeiting Defendants continue to commit such acts, and unless restrained and enjoined, will continue to do so, to Plaintiffs' irreparable injury.  Plaintiffs' remedy at law is inadequate to compensate them for injuries inflicted and threatened by Counterfeiting Defendants.

99.     Counterfeiting Defendants used and are continuing to use Plaintiffs' Marks with full knowledge of Plaintiffs' rights, and in bad faith with willful and deliberate intent to trade on the substantial recognition, reputation, and goodwill of Plaintiffs' Marks.  In view of the willful nature of Counterfeiting Defendants' infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

**EIGHTH CLAIM FOR RELIEF**
Fraud
**(Against the Rivadeneyra Defendants)**

100.    Plaintiffs reallege and incorporate herein by reference the allegations of the previous paragraphs as though fully set forth herein.

101.    The Rivadeneyra Defendants conspire with each other to dupe Plaintiffs into selling textbooks to them at greatly reduced pricing that would not be offered to them, but for the representations made regarding who they are and who their intended customers were.

102.    The Rivadeneyra Defendants make deceptive statements of fact to Publishers regarding the nature, purpose and intent of their companies and their book purchases.  Plaintiffs reasonably rely on these representations as a basis for selling the Rivadeneyra Defendants textbooks at reduced prices.

103.    Contrary to the representations to Plaintiffs, the Rivadeneyra Defendants are not who they purport to be and have no intention of distributing the textbooks they purchase from Publishers overseas.  They knew at the time that they purchased the books that they intended to distribute them to customers in the United States and have set up sham companies in order to disguise their fraud.  The Rivadeneyra Defendants are well aware that their deceitful

representations to Plaintiffs are the sole basis upon which they obtained the discounted pricing they obtained.

104.    By selling these significantly discounted textbooks to purchasers in the United States, the Rivadeneyra Defendants interfere with Plaintiffs' sales of regularly priced textbooks to wholesalers and consumers in the United States.

105.    The Rivadeneyra Defendants work with and coordinate their actions with each other and with other as-yet unidentified co-conspirators.  They work together for the purpose of furthering their fraud.  The Rivadeneyra Defendants are an essential part of the fraud and of the conspiracy from assuming false identities to providing the "cover" for their purchases to providing an outlet to sell the discounted books in the United States.

## PRAYER FOR RELIEF

By reason of the facts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.    Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

2.    An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Pirated Books with documents relating to all of the purchases and sales;

3.    That Defendants be required to pay to Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

4.    An order enjoining Defendants from further infringing upon Plaintiffs' respective copyrights, pursuant to 17 U.S.C. § 502;

5.    An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks.

6.    That Defendants be required to pay Plaintiffs such damages as Plaintiffs' have

sustained as a consequence of Defendants' unlawful acts as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

7.     That Defendants be required to deliver up for destruction all products, packaging, labels, literature, advertising and other material bearing imitations or reproductions, including confusingly similar variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118;

8.     That Defendants be required to pay actual damages and profits or statutory damages, at Plaintiffs' election, pursuant to 18 U.S.C. § 2318;

9.     That Defendants be required to pay actual and punitive damages for the fraud they have committed;

10.    An order enjoining Defendants from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

11.    An order preventing the further unfairly competitive acts by Defendants;

12.    For prejudgment interest at the applicable rate;

13.    For punitive damages;

14.   For attorneys' fees costs and costs of suit; and

15.   For such other and further relief the Court deems proper.

Respectfully submitted,

Dated: February 22, 2013

By: _____ /s/ Karen A. Confoy _____
Karen A. Confoy
kconfoy@sternslaw.com
**STERNS & WEINROTH, P.C.**
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, NJ 08607-1298

**OF COUNSEL:**

Matthew J. Oppenheim
Julie C. Chen
**OPPENHEIM + ZEBRAK, LLP**
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
matt@oandzlaw.com
Julie@oandzlaw.com

## **LOCAL RULE 201.1 CERTIFICATION OF NON-ARBITRABILITY**

Pursuant to Local Civil Rule 201.1, the undersigned counsel for Plaintiffs, The McGraw-Hill Companies, Inc., Pearson Education, Inc., Cengage Learning, Inc., and John Wiley & Sons, Inc., hereby certifies that the within the matter is not arbitrable, being that the Complaint seeks damages that are in an excess of $150,000.

Dated:   February 22, 2013                                     /s/ Karen A. Confoy
                                                                          Karen A. Confoy
                                                                          kconfoy@sternslaw.com

## LOCAL RULE 11.2 AND 40.1 CERTIFICATION

Pursuant to Local Civil Rules 11.2 and 40.1, the undersigned counsel for Plaintiffs, The McGraw-Hill Companies, Inc., Pearson Education, Inc., Cengage Learning, Inc., and John Wiley & Sons, Inc., hereby certifies that the matter in controversy is not related to any other action, arbitration or administrative proceeding in any court or of any pending arbitration or administrative proceeding.

Dated: February 22, 2013                     By:     /s/ Karen A. Confoy
                                             Karen A. Confoy
                                             kconfoy@sternslaw.com

# EXHIBIT A

## EXHIBIT A

|    | Publisher | ISBN | Title | Copyright Registration |
|----|-----------|------|-------|------------------------|
| 1  | Cengage | 978-0495813293 | An Invitation to Social Research: How It's Done | TX 7-285-650 |
| 2  | Cengage | 978-0547134376 | Assessment in Special and Inclusive Education | TX 7-032-970 |
| 3  | Cengage | 978-0495812241 | Basics of Social Research | TX 6-562-617 |
| 4  | Cengage | 978-0495812265 | Becoming a Helper | TX 6-347-720 |
| 5  | Cengage | 978-0495567387 | Business and Professional Communication | TX 6-991-259 |
| 6  | Cengage | 978-1439042236 | Business Ethics | TX 7-387-673 |
| 7  | Cengage | 978-0495603252 | Child, Family, School, Community | TX 6-989-735 |
| 8  | Cengage | 978-0495812432 | Classroom Teaching Skills | TX 6-201-166 |
| 9  | Cengage | 978-1439036402 | Communicate! | TX 6-572-213 |
| 10 | Cengage | 978-1439036433 | Communicating for Results | TX 6-572-102 |
| 11 | Cengage | 978-0495567448 | Communication Between Cultures | TX 6-375-382 |
| 12 | Cengage | 978-0495794158 | Communication Mosaics | TX 6-572-145 |
| 13 | Cengage | 978-0495095880 | Communication Research: Strategies and Sources | TX 7-394-517 |
| 14 | Cengage | 978-0538466790 | Contemporary Auditing: Real Issues and Cases | TX 7-467-858 |
| 15 | Cengage | 978-0495604372 | Essential Research Methods for Social Work | TX 6-564-034 |
| 16 | Cengage | 978-0495812951 | Essentials of Sociology | TX 6-562-541 |
| 17 | Cengage | 978-0495601432 | Essentials of Statistics | TX 6-881-267 |
| 18 | Cengage | 978-0495812203 | Essentials of Statistics for the Behavioral Sciences | TX 6-815-455 |
| 19 | Cengage | 978-0324597707 | Fundamentals of Financial Management | TX 7-035-007 |
| 20 | Cengage | 978-0495802648 | Global Politics | TX 6-867-985 |
| 21 | Cengage | 978-0495094982 | Great Traditions in Ethics | TX 6-560-224 |
| 22 | Cengage | 978-0495602293 | I Never Knew I Had a Choice | TX 6-158-697 |
| 23 | Cengage | 978-0495601265 | Intentional Interviewing and Counseling | TX 6-377-387 |
| 24 | Cengage | 978-0324594690 | Intermediate Financial Management | TX 7-352-683 |
| 25 | Cengage | 978-0495567646 | Interpersonal Communication: Everyday Encounters | TX 7-069-098 |
| 26 | Cengage | 978-0495601708 | Introductuction to the Profession of Social Work | TX 6-998-158 |
| 27 | Cengage | 978-0495812418 | Issues and Ethics in the Helping Professions | TX 6-355-748 |
| 28 | Cengage | 978-1439039076 | Macroeconomics | TX 7-389-149 |
| 29 | Cengage | 978-0495569428 | Management of Electronic Media | TX 6-997-289 |

|    | Publisher | ISBN | Title | Copyright Registration |
|----|-----------|------|-------|------------------------|
| 30 | Cengage | 978-1435488847 | Management of Information Security | TX 6-565-873 |
| 31 | Cengage | 978-0324593310 | Managing Human Resources | TX 6-988-781 |
| 32 | Cengage | 978-1439082744 | Mass Media Research | TX 6-150-624 |
| 33 | Cengage | 978-0495567851 | Media Effects Research | TX 7-008-534 |
| 34 | Cengage | 978-0495567509 | Persuasion | TX 7-389-981 |
| 35 | Cengage | 978-1428206427 | Portable Legacies | TX 6-900-663 |
| 36 | Cengage | 978-1439082720 | Public Relations Writing | TX 7-387-744 |
| 37 | Cengage | 978-0840031976 | Research Methods for the Behavioral Sciences | TX 6-403-425 |
| 38 | Cengage | 978-0495809388 | School: An Introduction to Education | TX 7-264-268 |
| 39 | Cengage | 978-0495812234 | Sociology: Essentials | TX 7-389-998 |
| 40 | Cengage | 978-0547204888 | Those Who Can, Teach | TX 6-338-436 |
| 41 | Cengage | 978-0495410683 | World Politics: Menu for Choice | TX 7-031-163 |
| 42 | Cengage | 978-0495569879 | Writing and Reporting News | TX 7-471-380 |
| 43 | McGraw-Hill | 978-0073375694 | Economics | TX 6-983-843 |
| 44 | McGraw-Hill | 978-0073382395 | Fundamentals of Corporate Finance | TX 7-054-606 |
| 45 | McGraw-Hill | 978-0073530055 | Marketing Management | TX 7-178-331 |
| 46 | McGraw-Hill | 978-0073405100 | Principles of Corporate Finance | TX 7-136-497 |
| 47 | Pearson | 978-0136006176 | Chemistry: The Central Science | TX 6-862-056 |
| 48 | Pearson | 978-0205798742 | Communication: Making Connections | TX 7-132-592 |
| 49 | Pearson | 978-0137154098 | Crosscultural Language and Academic Handbook | TX 6-239-499 |
| 50 | Pearson | 978-0205665693 | Crosscultural Psychology | TX 7-250-304 |
| 51 | Pearson | 978-0137144549 | Educational Psychology | TX 7-396-792 |
| 52 | Pearson | 978-0135016688 | Educational Psychology | TX 7-380-801 |
| 53 | Pearson | 978-0321505897 | Fundamentals of Anatomy and Physiology | TX 7-346-267 |
| 54 | Pearson | 978-0205625130 | In Conflict and Order | TX 7-024-311 |
| 55 | Pearson | 978-0205595754 | Intercultural Competence | TX 7-135-632 |
| 56 | Pearson | 978-0137153756 | International Business | TX 6-970-471 |
| 57 | Pearson | 978-0132146654 | International Economics | TX 7-379-727 |
| 58 | Pearson | 978-0321293831 | International Economics | TX 6-234-590 |
| 59 | Pearson | 978-0205625703 | Interpersonal Communication Book | TX 7-013-072 |
| 60 | Pearson | 978-0137012329 | Introduction to Teaching | TX 6-579-854 |
| 61 | Pearson | 978-0132090711 | Management | TX 6-929-804 |

| | Publisher | ISBN | Title | Copyright Registration |
|---|---|---|---|---|
| 62 | Pearson | 978-0136009986 | Marketing Management | TX 6-937-152 |
| 63 | Pearson | 978-0321550071 | Microbiology | TX 7-350-014 |
| 64 | Pearson | 978-0205746927 | Political Science | TX 6-986-398 |
| 65 | Pearson | 978-0136025351 | Politics in States and Communities | TX 6-203-587 |
| 66 | Pearson | 978-0205702718 | Social Science | TX 5-462-993 |
| 67 | Pearson | 978-0205769483 | Social Work: An Empowering Profession | TX 6-813-720 |
| 68 | Pearson | 978-0205731992 | Sociology Now: The Essentials | TX 7-146-466 |
| 69 | Pearson | 978-0205182145 | Sociology: A Down to Earth Approach - Core Concepts | TX 7-101-771 |
| 70 | Pearson | 978-0138007966 | Teaching and Learning with Technology | TX 6-022-661 |
| 71 | Pearson | 978-0205753079 | Understanding Human Development | TX 6-378-518 |
| 72 | Pearson | 978-0205769063 | Understanding Psychology | TX -715-7400 |
| 73 | Pearson | 978-0205750344 | Writing Fiction | TX 7-219-323 |
| 74 | Wiley | 978-0470039403 | Elementary Differential Equations | TX 7-192-021 |

# EXHIBIT B

# EXHIBIT B

| Publisher | Imprint | Trademark Registration(s) |
|---|---|---|
| Cengage | Brooks Cole | 3603376; 3603349 |
| Cengage | South-Western | 3603376; 3603349 |
| Cengage | Wadsworth | 3603376; 3603349 |
| McGraw-Hill | McGraw-Hill, Inc.; The McGraw-Hill Companies, Inc.; and The McGraw-Hill Companies, Inc. | 1,350,345; 3,317,088; 3,316,236 |
| Pearson | Allyn & Bacon | 2,007,295; 2,599,724; 2,600,081; 2,652,792; 2,679,355; 2,691,830; 1,602,228 |
| Pearson | Merrill | 2,007,295; 2,599,724; 2,600,081; 2,652,792; 2,679,355; 2,691,830; 1,342,095 |
| Pearson | Pearson | 2,007,295; 2,599,724; 2,600,081;2,652,792; 2,679,355; 2,691,830 |
| Pearson | Prentice Hall | 2,007,295; 2,599,724; 2,600,081;2,652,792; 2,679,355; 2,691,830; 1,332,044, 1,332,639; 1,375,654 |
| Wiley | JW | 1,639,555 |
| Wiley | Wiley | 1,003,988; 2,159,987 |

**EXHIBIT C**

## EXHIBIT C

|   | Publisher | ISBN | Title | Copyright Registration |
|---|-----------|------|-------|------------------------|
| 1 | McGraw Hill | 9780073511313 | Essentials of Economics | TX 6972084 |
| 2 | McGraw Hill | 9780073523828 | Concepts of Physical Fitness | TX 7207014 |
| 3 | McGraw Hill | 9780078110856 | Survey of Accounting | TX 7391786 |
| 4 | McGraw Hill | 9780073529998 | Fundamentals of Selling | TX 7360075 |
| 5 | McGraw Hill | 9780078137143 | Essentials of Strategic Management | TX 7013932 |
| 6 | Cengage | 9780495901976 | Theatre in Your Life | TX 7395624 |
| 7 | Cengage | 9781111538910 | Contemporary Color Theory | TX 7422730 |
| 8 | Cengage | 9780495913115 | Earth and Its People | TX 7555649 |
| 9 | Cengage | 9780495909484 | Texas Politics Today | TX 7392136 |