NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN WILEY & SONS, INC., et al., | Civil Case No. 13-1085 (FSH) (JBC) |
| Plaintiffs, |  |
|  | **OPINION** |
| v. |  |
|  | December 19, 2013 |
| EDUARDO RIVADENEYRA, et al., |  |
| Defendants. |  |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendants' Motions to Dismiss [Docket Nos. 24 & 36] and Plaintiffs' Cross-Motion related to service of process and discovery [Docket No. 40]. The Court has considered the parties' submissions on the papers pursuant to Fed. R. Civ. P. 78.

**I. BACKGROUND**

Plaintiffs, John Wiley & Sons, Inc., the McGraw-Hill Companies, Inc., Pearson Education, Inc., and Cengage Learning, Inc. (collectively "Plaintiffs") filed a Complaint on February 22, 2013 [Docket No. 1], alleging, among other things, trademark infringement and fraud against fifteen named Defendants. Plaintiffs are publishers of academic textbooks. Each company uses price differentiation to sell textbooks at different prices depending on the geographic area: customers in developing countries are sold Plaintiffs' books at a discount,

1

whereas customers in the United States do not receive a discount. These books contain markings based on the geographic area where Plaintiffs have approved them to be sold. Plaintiffs allege that they sold academic textbooks to Defendant Eduardo Rivadeneyra,[1] and the assorted companies he operated,[2] at the discounted rate for developing countries based on his representation that the books would be sold by his book store, Sinclair Bargain Books, to schools outside the United States, particularly in Peru and Jamaica. This representation, Plaintiffs contend, was false. Instead, Rivadeneyra allegedly diverted Plaintiffs' textbooks en route and sold the textbooks in the United States through the companies he operated. Plaintiffs contend that Eduardo Rivadeneyra was assisted in this scheme by his wife, Therese Hoddy, his brother, Sergio Rivadeneyra, his cousin, Mario Figallo Rivadeneyra, his brother-in-law, Thomas Hoddy, and his sister-in-law, Sally White Rivadeneyra-Cardenas (collectively, along with the companies, "Defendants"). Plaintiffs also assert that Eduardo Rivadeneyra and members of his extended family made and distributed counterfeit copies of these books, which were sold in the United States.

In their eight-count Amended Complaint [Docket No. 17], Plaintiffs assert claims of Copyright Infringement Under 17 U.S.C. §§ 101 et seq. (Count 1); Infringement of Federally-Registered Trademarks Under 15 U.S.C. § 1114 (Count 2); Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a) (Count 3); Trafficking in Counterfeit Documentation or Labels Under 18

---

[1] Defendant is referred to as "Eduardo Rivadeneyra" in the Complaint, whereas his last name is spelled "Rivandeneyra" in the Motion to Dismiss. The Court will use the variation currently listed on the docket, "Rivadeneyra."

[2] These companies include Inversiones Linarias; First Class Club, SAC; Inter-Express Forwarding, Inc.; Ameritext; Libro Texto; Phoenix IE, Inc.; Academic Express; Quality Books; Sinclair Bargain Books; and S&S Resources.

U.S.C. § 2318 (Count 4); Illegal Importation of Goods Bearing Infringing United States Trademarks or Names Under 15 U.S.C. § 1124 and 19 U.S.C. § 1526 (Count 5); Trademark Dilution In Violation of 15 U.S.C. § 1125(c) (Count 6); Federal Unfair Competition And False Designation of Origin In Violation of 15 U.S.C. § 1125(a) (Count 7); and Fraud (Count 8).[3] Defendants Eduardo Rivadeneyra, Therese Hoddy, Thomas Hoddy, Inter-Express Forwarding, Inc., Academic Express, Quality Books, Phoenix IE, Inc., Ameritext, Libro Texto, and Inversiones Linarias have moved to dismiss the Complaint [Docket Nos. 24 & 36].[4] Plaintiffs have cross-moved for discovery and for a finding that they have properly served Defendant Inversiones Linarias and Sinclair Bargain Books [Docket No. 40].

**II. STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

---

[3] Counts 1-7 are asserted against only Defendants Eduardo Rivadeneyra, Therese Hoddy, Sally White-Rivadeneyra-Cardenas, and Sergio Rivadeneyra. Count 8 is asserted against all named Defendants except Sally White-Rivadeneyra-Cardenas and Sergio Rivadeneyra.

[4] Defendants Sally White-Rivadeneyra-Cardenas, Sergio Rivadeneyra, Mario Figallo Rivadeneyra, Class Club, SAC, and Sinclair Bargain Books have not joined this motion.

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir.2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949 (internal quotations and alterations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).

**III. DISCUSSION**

*a. Trademark Claims*

Defendants contend that Plaintiffs' claims asserting trademark violations, Counts 2-7, "should be dismissed because the claims sound in fraud and therefore are subject to Rule 9." (Defs.' Br. in Supp. of its Mot. to Dismiss 18, ECF No. 24-1). As Plaintiffs note, however, there

4

appear to be two separate types of allegedly wrongful conduct that Plaintiffs are asserting: first, that Defendants purportedly purchased Plaintiffs' textbooks by fraudulently representing that the books would be sold in developing countries (addressed in subsection (c) *infra*); and second, that Defendants acquired and produced counterfeit copies of Plaintiffs' textbooks, which Defendants allegedly attempted to pass off as genuine copies for sale in the United States. The latter conduct, as alleged, does not appear related to the alleged fraud. Nor have Defendants identified any other cases where trademark claims were dismissed because they sounded in fraud. Consequently, Plaintiffs' trademark claims are subject to Rule 8 pleading requirements, not Rule 9(b).

"The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion." *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 462 (3d Cir. 1983); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,* 30 F.3d 466, 472 (3d Cir. 1994); *see, Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 291–93 (3d Cir. 1991), cert. denied, 502 U.S. 939 (1991). "To prove trademark infringement, a plaintiff must show that: (1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture,* 30 F.3d at 472 (citing *Ford Motor Co.*, 930 F.2d at 291).

Defendants contend that the trademark claims, Counts 2-7, are insufficient because they were pled in a "'shotgun' pleading fashion, solely by stating legal elements for the alleged causes of action." (Defs.' Br. 19). Moreover, Defendants assert that the trademark claims should be dismissed because they fail to identify which of the four Plaintiffs' works were infringed. As to these counts of the Amended Complaint, Plaintiffs assert that they own valid registered

Trademarks. (Compl ¶ 32). They contend that Defendants "[Eduardo Rivadeneyra], Therese Hoddy, Sally White-Rivadeneyra-Cardenas, and Sergio Rivadeneyra" sold counterfeit copies of Plaintiffs' "Authentic Works bearing Plaintiffs' Marks" (Am. Compl. ¶ 44), which were different from their authentic works based on inferior "binding, glue, paper, color and printing," (Am. Compl. ¶ 49). Plaintiffs further allege that "prospective purchasers are likely to believe that the Pirated Books are Plaintiffs' authentic publications," (Am. Compl. ¶ 49), in part because "Defendants are . . . claiming the Pirated Books were authentically manufactured in the United States," (Am. Compl. ¶ 81). Plaintiffs identify forty-one trademarked works marketed under several different imprints, listed in an exhibit attached to, and relied upon by, the Amended Complaint, sorted by the owner of the trademark, (Am. Compl. ¶ 32; Am. Compl. Ex. B.). Plaintiffs allege that Defendants sold counterfeit copies of these works to wholesalers, including Sterling Corporation. (Am. Compl. ¶ 51). As such, Plaintiffs have identified which marks were allegedly infringed and how Defendants' alleged use of the mark to identify goods is likely to create confusion concerning the origin of the goods. *See Fisons Horticulture*, 30 F.3d at 472. Defendants have not identified any other elements of Counts 2-7 that they claim are insufficiently pled. Accordingly, Defendants' motion to dismiss Plaintiffs' trademark claims is denied.

*b. Copyright Claim*

A claim for copyright infringement is governed by Federal Rule of Civil Procedure 8, and involves two "essential elements: ownership of copyright, and copying by the defendant." *Dam Things from Den. v. Russ Berrie & Co.,* 290 F.3d 548, 561 (3d Cir. 2002) (citing *Whelan Assocs., v. Jaslow Dental Lab., Inc.,* 797 F.2d 1222, 1231 (3d Cir. 1986)). "Copying is proven by

6

showing not only that the defendant had access to a copyrighted work, but also that there are substantial similarities between the two works." *Dam Things,* 290 F.3d at 561 (citing *Ford Motor Co. v. Summit Motor Prods.,* 930 F.2d 277, 291 (3d Cir. 1991) ("[C]opying is demonstrated when someone who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106.")).

The parties note that there is no Third Circuit case directly on point as to whether a copyright plaintiff must allege the specific acts of infringement in order to adequately allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 662 (internal quotation marks omitted). Both parties' briefs cite the district court case, *Bradshaw,* for the proposition that the plausibility standard for copyright claims "entail[s] certain specific pleading requirements." *Bradshaw v. American Institute for History Educ.*, No. 12–1367, 2013 WL 1007219, at *3-4 (D.N.J. Mar. 13, 2013) (citing *Gee v. CBS, Inc.*, 471 F. Supp. 600, 643 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979)). The majority of recent decisions in this district have found that a copyright infringement claim must describe the acts of infringement. *See Stampone v. Stahl*, Civ. No. 05-1921, 2005 WL 1694073, at *2 (D.N.J. July 19, 2005) (''plaintiff fails to allege any specific acts that would lead the Court to find that there was an infringement of his alleged copyright.''); *Bradshaw*, 2013 WL 1007219, at *4; *Hanover Arch. Serv., P.A. v. Christian Testimony–Morris, N.P.,* No. 10–5455, 2011 WL 6002045, at *5 (D.N.J. Nov. 29, 2011); *Levey v. Brownstone Inv. Group, LLC*, Civ. No. 11-395, 2013 WL 3285057, at *6 (D.N.J. June 26, 2013); *Nourison Indus., Inc. v. Virtual Studios, Inc.*, No. 09–5746, 2010 WL 2483422 at *3 (D.N.J. June 3, 2010); *Goodman v. Harry Fox Agency*, No. 03–1176, 2003 WL 25269381 at *9 (D.N.J. Dec. 30, 2003). The Court is persuaded by the weight of recent authority holding that, to meet the element of copying under the plausibility

standard of *Iqbal*, Plaintiffs must plead the acts infringement.

Under either standard, Plaintiffs' claims survive the motion to dismiss. As to the first element, Plaintiffs allege that are the owners of the asserted copyrights. (Am. Compl. ¶¶ 32, 55; Am. Compl. Ex. A). One of the rights conferred to a copyright holder is the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale." 17 U.S.C. § 106(3). Plaintiffs allege that the works were infringed by Defendants' acts of "deliberately purchasing, manufacturing, importing, distributing and reselling the infringing copies." (Am. Compl. ¶ 56). This conduct, Plaintiffs contend, continued until at least 2012. (Am. Compl. ¶ 56). The Amended Complaint relies upon Exhibit A, identifying which of the four Plaintiffs' works Defendants allegedly infringed. And, as discussed in the section above, Plaintiffs describe the acts of infringement by detailing Defendants' alleged importation and sale of counterfeit copies of Plaintiffs' authentic works, allegedly infringing Plaintiffs' exclusive right to distribute copies of their works.

*c. Fraud Claim*

Defendants assert that Plaintiffs have not plead sufficient detail, under the heightened pleading requirement for fraud of Federal Rule of Civil Procedure 9(b), because the Complaint impermissibly lumps all Defendants together and fails to allege facts relating to the fraud, such as "who, when, where, what and how."

Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The heightened pleading requirement for fraud is applied under both state and federal law. *See*

*Kronfeld v. First Jersey Nat. Bank,* 638 F. Supp. 1454, 1462 (D.N.J. 1986). Rule 9(b) requires a plaintiff's complaint to address the following elements of fraud: (1) a specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) the plaintiff acted upon it to his damage. *In re Rockefeller Center Properties, Inc, Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

With respect to the first element, the complaint must describe the circumstances of the fraudulent representation of material facts, identifying factual details, such as the "who, what, when, where and how of the events at issue." *Rockefeller,* 311 F.3d at 217-18 (internal citation omitted). This includes the identity the person making, as well as the person receiving, the false statements. *Id*. at 217. Each of these elements must be satisfied with respect to every defendant. *Naporuno Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999). Plaintiff need not always identify the particular time and place of the misrepresentation, however, so long as the complaint contains some "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *see also NN & R, Inc. v. One Beacon Ins. Grp.*, 362 F. Supp. 2d 514, 518 (D.N.J. 2005) (quoting *Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 658 (3d Cir. 1998)).

1. Defendant Eduardo Rivadeneyra

As against Eduardo Rivadeneyra, the Amended Complaint explicitly attributes allegedly false statements to this Defendant on particular dates. It describes five instances, between May

and July 2011, where Eduardo Rivadeneyra allegedly made representations by email and letter to each of the three Plaintiffs asserting this cause of action.[5] Plaintiffs contend that he "falsely pretended to be 'Richie Sinclair,'" (Am. Compl. ¶ 40(c)), the owner of a bookstore in Jamaica that had "been selling Elementary, High School and University Textbooks to students and colleges across Jamaica and the Caribbean," (Am. Compl. ¶ 40(a)), in order to receive discounted books intended for developing countries. Plaintiffs claim they relied on these misrepresentations, providing textbooks to Rivadeneyra, who then sold the books to U.S. and Hong Kong customers, (Am. Compl. ¶ 40(a), (b)), instead of those customers in Jamaica, Peru, and the Caribbean, as he had represented. Plaintiff Cengage alleges it sold Rivadeneyra $160,000 worth of the textbooks, (Am. Compl. ¶ 40(a)); Plaintiff Wiley alleges it sold him $740,000 worth of textbooks, (Am. Compl. ¶ 40(b)); and Plaintiff McGraw-Hill alleges it sold him multiple shipments of textbooks, (Am. Compl. ¶¶ 40(c), (d)). This level of specificity in describing the approximate date, nature, and circumstances of the misrepresentations is sufficient to inject precision and protect against unsubstantiated allegations of fraud. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir. 1984).

2. Corporate Defendants

Plaintiffs assert that Eduardo Rivadeneyra was an agent for the corporate Defendants, thereby imputing his fraud onto those corporations, including Inversiones Linarias, FCC Peru, Inter-Express Forwarding, Inc., Ameritext, Libro Texto, Phoenix IE, Academic Express, Sinclair Bargain Books, and Quality Books. For each of these companies, Eduardo Rivadeneyra is alleged to have been an owner and operator of the company, (Am. Compl. ¶¶ 13-17), or to have

---

[5] In their opposition to the motion to dismiss, Plaintiff Pearson dropped its fraud claim against all Defendants. (Pls.' Oppn. 10 n.1, ECF No. 29).

acted as an agent, purchasing Plaintiffs' books to be resold by the principal - the corporations. (Am. Compl. ¶¶ 34-35). Fraudulent statements of an agent may be attributed to the principal when made within the scope of the agency relationship. "Under the law of imputation, courts impute the fraud of an officer to a corporation when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation." *Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 358 (3d Cir. 2001). "Each of these elements requires a fact-sensitive inquiry that renders dismissal of the claim prior to discovery inappropriate." *Matlack Leasing, LLC v. Morison Cogen*, *LLP*, Civ. No. 09-1570, 2010 WL 114883, at * 5 (E.D. Pa. Jan. 13, 2010) (citing *Lafferty*, 267 F.3d at 358). Plaintiffs have alleged that Defendant Eduardo Rivadeneyra was acting as an agent by making statements on behalf of each corporation and purchasing textbooks for the benefit of each corporation. Thus, if proved, Plaintiffs may be able to impute the alleged fraud to each corporate entity.

### 3. Members of Eduardo Rivadeneyra's Extended Family

As against the members of Eduardo Rivadeneyra's family, Defendants Therese Hoddy and Thomas Hoddy seek dismissal of the Complaint because the allegations of fraud against them are lumped together rather than specific to each Defendant.

"[W]here multiple defendants are involved, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Tredennick v. Bone*, 323 F. App'x 103, 105 (3d Cir. 2008); *see also MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (with multiple defendants "the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant."); *A-Valley Engineers, Inc. v. Board of Chosen Freeholders of Camden,* 106 F. Supp. 2d 711, 716 (D.N.J. 2000) ("acts of fraud must be pled

11

specifically with respect to each defendant"). A fraud claim will be dismissed where a "Plaintiff lumps all [defendants] together as having engaged in wrongful conduct without specifying which defendant was responsible for which actions." *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011); *Mayor & Council of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1060 (D.N.J. 1993) (a plaintiff cannot "group all the defendants together in its count for fraudulent concealment without specifying the precise misconduct associated with each defendant."). "Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability" for fraud where there are multiple defendants. *Donovan v. Flamingo Palms Villas, LLC,* 2:08-cv-1675, 2010 WL 1006717, at *5 (D. Nev. Mar. 15, 2010). But the complaint will be dismissed if it does not specify the role each defendant had within the fraudulent conspiracy. *Moravian Dev. Corp. v. Dow Chem. Co.*, 651 F. Supp. 144, 148-49 (E.D. Pa. 1986). *Guketlov v. Homekey Mortg. LLC*, No. C09-1265, 2009 WL 3785575, at *4 (D. Wash. Nov. 9, 2009) ("plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme.").

Examining the Amended Complaint, however, it is unclear whether Plaintiffs assert that Defendants Therese Hoddy, Thomas Hoddy, or any other individual apart from Eduardo Rivadeneyra, ever communicated with Plaintiffs. These Defendants are grouped together, by definition, in the Complaint, along with Eduardo Rivadeneyra and Mario Figallo Rivadeneyra as "collectively, with the individuals . . . the 'Rivadeneyra Defendants.'"[6] (Am. Compl. ¶ 35). They are accused in general terms, rather than specifically, of making misrepresentations. (Am. Compl. ¶ 37 ("The Rivadeneyra Defendants have made numerous false representations to

---

[6] This definition also includes the corporate Defendants Inversiones Linarias, FCC Peru, Inter-Express, Ameritext, Libro Texto, Phoenix IE, Academic Express, Sinclair Bargain Books, and Quality Books.

Plaintiffs in order to induce Plaintiffs to sell them Overseas [textbook editions] and International Editions at discount prices.")). But in describing those actual misrepresentations, as required by Rule 9(b), Eduardo Rivadeneyra is identified as the speaker – not the other Defendants. The allegations in the Complaint state that an individual calling himself "Richard Sinclair" represented that he was an owner of a bookstore that sells textbooks to customers outside of the United States. The individual making these representations as Richard Sinclair is alleged to have been, in reality, Eduardo Rivadeneyra. (Am. Compl. ¶¶ 34, 36). The Complaint further alleges that Eduardo Rivadeneyra pretended to be multiple individuals while communicating with Plaintiffs, but that all communication actually came from Rivadeneyra himself: "ER[7] will instruct third parties with whom he is doing business to direct their communications to his relatives or friends, even though he is, in fact, the one communicating with them." (Am. Compl. ¶ 34). This is alleged to have started on May 9, 2011, when Eduardo Rivadeneyra made contact with Plaintiffs and "ER falsely introduced himself to Plaintiff Cengage as a man by the name of Richard Sinclair." (Am. Compl. ¶ 40(a)).

Yet in several paragraphs of the Complaint, other Defendants are inserted into communications between Eduardo Rivadeneyra and the Plaintiffs without explanation. During the next communication, Plaintiffs state that "Defendant ER, in conjunction with Defendant Figallo Rivadeneyra, represented to Plaintiff Wiley by letter" that the books would be shipped to Peru (Am. Compl. ¶ 40(b)). In the third communication, Therese Hoddy is incorporated as speaking with Eduardo Rivadeneyra: "Defendants ER and Therese Hoddy falsely represented to Plaintiff McGraw-Hill that they were 'Richard Sinclair' doing business as 'Sinclair Bargain Books'" by email (Compl ¶ 40(c)). Finally, Plaintiffs contend, these statements induced their

---

[7] The Complaint refers to Eduardo Rivadeneyra as "ER."

reliance "with the participation of Defendants Thomas and Therese Hoddy" (Am. Compl. ¶ 40(a)).

Although Plaintiffs note in opposition to the motion, "[t]he plaintiff must also allege who made the misrepresentation to whom" (Pls.' Oppn. to Defs.' Mot. to Dismiss 7, ECF No. 29 (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984))), they do not explain the link between any other Defendant and the alleged misrepresentations made by Eduardo Rivadeneyra as pled in the Complaint. Apart from Eduardo Rivadeneyra, who allegedly impersonated Richard Sinclair, the Complaint provides no details as to how these misrepresentations were made "in conjunction with" or "with the participation of" Therese or Thomas Hoddy. Instead, these allegations of joint participation by all Defendants are grouped in an unclear and conclusory fashion. "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants,'" *Eli Lilly & Co. v. Roussel Corp.,* 23 F. Supp. 2d 460, 492 (D.N.J. 1998), or where the defendants are grouped together. *Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 208 (S.D.N.Y. 1996) ("plaintiffs' failure to distinguish among the 'Ligator Defendants' [is] an egregious example of prohibited 'group pleading.'").

Similarly, although they evidently allege a fraudulent conspiracy, (Am. Compl. ¶¶ 95, 99), Plaintiffs fail to specify the role each Defendant had in the scheme other than generally stating that there was such a conspiracy, (Am. Compl. ¶¶ 34, 35 ("[Eduardo Rivadeneyra] often sets these companies up in the names of his relatives and close friends . . . [yet] each [company] has been directed, established, formed, coached, managed and/or owned by ER, either directly or through the other individual Defendants"); Am. Compl. ¶ 95 ("The Rivadeneyra Defendants work with and coordinate their actions with each other and with other as-yet unidentified co-

conspirators.")).[8]

An allegation of fraud against multiple defendants will be dismissed where the facts as alleged in the complaint do not show that each defendant either made a fraudulent representation or objectively manifested agreement to participate in the scheme surrounding the other defendants' fraudulent representations. *See Moravian Dev. Corp. v. Dow Chem. Co.,* 651 F. Supp. 144, 148-49 (E.D. Pa. 1986). As against Therese Hoddy and Thomas Hoddy, Count 8 is dismissed without prejudice and with leave to file an amended complaint remedying these defects within 45 days.

   *d. Service of Process*

Defendant Inversiones Linarias asserts improper service, claiming that Plaintiffs' service upon a former owner of the corporation is ineffective. Therese Hoddy claims that she had an ownership interest in a Peruvian company called Inversiones Linarias SAC from April 2004 until May 2012, and that when she was served on June 29, 2013, she was not associated with the company. (Decl. of Therese Hoddy ¶¶ 3-4, ECF No. 36-2).

Service upon foreign corporations is addressed by Federal Rule of Civil Procedure 4(h), which provides that service upon a foreign corporation can be effectuated in the United States[9]

---

[8] Plaintiffs rely on *Petro-Tech, Inc. v. W. Co. of N. Am.,* 824 F.2d 1349, 1362 (3d Cir. 1987), arguing that they need not attribute each individual act to the particular Defendant that committed it. The cited passage dealt with vicarious liability under RICO, and did not determine whether Rule 9(b) applied. Instead the Court found that under either standard, the RICO claim survived because the Complaint had been sufficiently detailed about each Defendants' involvement in the scheme. *Id.*

[9] Serving a foreign corporation in a foreign country under Rule 4(h) permits service by any "internationally agreed means of service . . . such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f). When serving process abroad, compliance with the provisions of the

either by "delivering a copy of [the] summons and of [the] complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process" or by complying with State service of process requirements as described in Rule 4(e)(1). Rule 4(e)(1) allows service in accordance with the "law of the state in which the district court is located, or in which service is effected." *Canada Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG*, CIV. 06-3800 GEB, 2007 WL 1726565, at *4 (D.N.J. June 13, 2007) (quoting Fed. R. Civ. P. 4(h) and 4(e)). Plaintiffs bear the burden of establishing the validity of service on a motion to dismiss. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

Here Plaintiffs assert that Hoddy was served as an agent of Inversiones under New Jersey law, which permits service upon a corporation by serving "any officer, director, trustee or managing or general agent, or any person authorized by appointment or by law to receive service of process . . . ." N.J. Ct. R. 4:4-4(a)(6). There must be an agency relationship between the individual upon whom process is served and the corporation. *See Marino v. Kent Line Intern.*, 256 F. App'x 448, 452-53 (3d Cir. 2007); Charles A. Wright & Arthur R. Miller, *Federal Rules of Civil Procedure*, Service on Organizational Defendants § 1101 (3d ed. 1998). Service may be ineffective where process is delivered after the expiration of the agency relationship. *See Marino,* 256 F. App'x at 253.

Plaintiffs contend that service is effective here because Hoddy held herself out as an agent of Inversiones, even though she was no longer associated with the corporation. An agency

---

Hague Convention are mandatory if the country where service is attempted is a signatory of the Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L.Ed.2d 722 (1988). "The primary method [of service], set forth by Articles 2 through 6 [of the Convention], requires each signatory country to establish a Central Authority to monitor and ensure proper service." *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 470 (D.N.J. 1998).

relationship is created "when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006) (internal quotation marks omitted). Such relationship exists if there is apparent authority, such that "a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." *New Jersey Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 203 N.J. 208, 220 (2010) (quoting Restatement (Third) of Agency § 2.03).

Plaintiffs assert that Defendant Hoddy was an agent of Inversiones; that the corporation held her out as an agent; that there was no indication from the corporation that the agency relationship had been terminated; that both Hoddy and Inversiones continued to hold her out as an agent of the corporation; and that Plaintiffs had reason to believe that Hoddy continued to act as an agent, sufficient to serve process.[10] Plaintiffs have stated enough factual material to allege either actual or apparent authority. As such, the Court will not dismiss for failure to serve. Moreover, at this stage, there is no prejudice to Defendant Inversiones because it has actual notice. *EOI Corp. v. Med. Mktg. Ltd.,* 172 F.R.D. 133, 143 (D.N.J. 1997). Any party can take additional discovery on this issue, though it is advised that Plaintiffs serve Inversiones again to

---

[10] There are facts in dispute between the parties as to whether Hoddy was terminated as an agent, and whether there was revocation of her authority. Hoddy asserts that she was no longer an owner of Inversiones as of May 14, 2012. On the other hand, Plaintiffs argue that her husband, Rivadeneyra, stated on multiple occasions that Therese Hoddy continues to own Inversiones. Moreover, they contend that both the principal and the agent continued to act as though there was an agency relationship, leading Plaintiffs to reasonably believe the agent had such authority. Thus, revocation or invocation of the agent's authority is a fact at issue. The Court will not dismiss on this factual issue until there has been proper discovery.

avoid additional wasted time.[11]

Plaintiffs also request that the Court order that service has been effectuated upon Sinclair Bargain Books. The Court notes that service appears proper under the above recited principles of agency, however, this issue may be further tested if Defendant Sinclair Bargain Books fails to answer and Plaintiffs move for a default judgment.

Finally, Plaintiffs request expedited discovery and an enlargement of time in order to serve Defendants Sally White Rivadeneyra-Cardenas and Sergio Rivadeneyra. These requests are granted. For good cause shown, Plaintiffs are provided an additional 45 days to serve the remaining Defendants (as well as, at their discretion, to serve Inversiones again to avoid unnecessary disputes) and the Court grants Plaintiffs' motion to engage in expedited discovery for the purpose of service upon Sally White Rivadeneyra-Cardenas and Sergio Rivadeneyra. Any further disputes regarding this discovery are referred to the Magistrate Judge.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is denied, except with respect to the fraud allegations in Count 8 against Therese and Thomas Hoddy. Plaintiffs are granted leave to amend to provide the necessary specifications identified herein regarding those claims within 45 days. All other claims shall move forward. An appropriate Order follows.

                                        **/s/ Faith S. Hochberg**
                                        **Hon. Faith S. Hochberg, U.S.D.J.**

---

[11] See footnote 9.