UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN WILEY & SONS, INC., et al.,

*Plaintiffs*,

v.

EDUARDO RIVADENEYRA, et al.,

*Defendants*.

Civil Action No. 13-1085

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Defendant Sterling Educational Media, Inc.'s ("Sterling") motion to dismiss, Dkt. No. 156. Because no allegations support the claim that Sterling committed fraud, that claim will be dismissed. However, Plaintiffs sufficiently allege civil conspiracy to commit fraud by Sterling and the other defendants, so that claim will proceed. The motion is therefore **GRANTED IN PART** and **DENIED IN PART**.

**I.   BACKGROUND**

In this case, four textbook publishers allege that certain companies and individuals conspired together to defraud the publishers, fraudulently obtaining textbooks at overseas prices even though the books would be sold domestically. In the instant motion to dismiss, one of the defendant entities, Sterling, seeks to dismiss the fraud and conspiracy to commit fraud claims against it because no allegations indicate Sterling itself ever committed fraud.

Plaintiffs, John Wiley & Sons, Inc., McGraw Hill Global Education Holdings, LLC, Pearson Education, Inc., and Cengage Learning, Inc. ("Plaintiffs") sued defendants Eduardo Rivadeneyra ("Rivadeneyra"), Therese Hoddy ("Hoddy"), Mario Figallo Rivadeneyra, Inversiones Linarias, First Class Club, SAC, Inter-Express Forwarding, Inc., Ameritext, Libro

1

Texto, Phoenix IE, Inc., Academic Express, Sinclair Bargain Books, Quality Books, and Sterling Educational Media, Inc. ("Sterling") (collectively, "Defendants") based upon an alleged fraudulent scheme to obtain textbooks at discount overseas pricing and sell those books in the United States. Fourth Am. Compl. ¶¶ 1-2, Dkt. No. 140.

The Fourth Amended Complaint describes the fraudulent scheme.[1] Defendants obtained the textbooks purportedly to sell overseas. Id. ¶ 3. Instead, the books were sent through several sham companies and then sold in the United States. Id. Sales between the overseas purchasing companies and domestic companies were performed on paper; books rarely were physically moved. Id. ¶ 7. Certain defendants created and operated freight forwarders Phoenix IE and Inter-Express, which would receive shipments from Plaintiffs for the overseas companies and divert the shipment to pre-arranged buyers, including Sterling. Id. ¶ 8. Allegedly, the corporate form in the overseas purchasing companies, U.S. "wash companies," and freight forwarders was not observed, with Rivadeneyra and Hoddy acting interchangeably within all those companies and using those companies' money interchangeably. Id. ¶ 10. Other allegations concern purchases and sale of unauthorized copies of Plaintiffs' textbooks by Hoddy. Id. ¶ 14.

The instant motion concerns only Sterling. Sterling is a domestic seller of textbooks. Id. ¶ 19. Sterling allegedly assisted Defendants in creating overseas purchasing companies to buy the

---

[1] The Fourth Amended Complaint also contains many other counts, including Copyright Infringement under 17 U.S.C. §§ 101 et seq. (Count 1); Infringement of Federally-Registered Trademarks under 15 U.S.C. § 1114 (Count 2); Trademark Counterfeiting under 15 U.S.C. § 1114(1)(a) (Count 3); Trafficking in Counterfeit Documentation or Labels under 18 U.S.C. § 2318 (Count 4); Illegal Importation of Goods Bearing Infringing United States Trademarks or Names under 15 U.S.C. § 1124 and 19 U.S.C. § 1526 (Count 5); Trademark Dilution in Violation of 15 U.S.C. § 1125(c) (Count 6); Federal Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a) (Count 7); Negligent Misrepresentation (Count 9); Constructive Fraud (Count 10); and Common Law Unfair Competition (Count 11). Only the eighth count—fraud and conspiracy to defraud—is asserted against Sterling, and the current motion to dismiss concerns only that claim.

textbooks. Id. ¶ 4. Sterling performed profit analyses, comparing prices at which Defendants can buy textbooks to the prices Sterling could sell the textbooks in the United States. Id. ¶ 5. Sterling then provided detailed purchase lists to Rivadeneyra and Hoddy, describing which textbooks they should purchase through their overseas companies and at what price. Id. Sterling facilitated those purchases by selecting which textbooks to purchase and committing to purchase them before they are acquired. Id. ¶ 12. After Rivadeneyra, Hoddy, and their companies purchased the textbooks, Sterling bought them from the domestic companies, including Academic Express and Quality Books, through which the textbooks were funneled to "wash" the books of their foreign origin. Id. ¶ 7. Sterling knew that Rivadenyra and Hoddy represented to Plaintiffs that they intend to sell the books overseas, and that Sterling could not acquire the books from Plaintiffs for the prices it paid Rivadeneyra and Hoddy. Id. ¶ 12.

This is not mere speculation. Sterling entered into a formal agreement with Rivadeneyra and Hoddy in May 2011 which includes many of Plaintiffs' allegations. Id. ¶ 39. This agreement details that Sterling was to (1) provide analysis of publisher price lists from which Sterling would create purchase orders; (2) advance money for textbook purchases; (3) create profit reports by publisher and country; (4) consult with Rivadeneyra and Hoddy on negotiation strategies for dealing with Plaintiffs; and (5) provide advice on accounting, banking, and human resources. Id. Sterling's president and chief executive officer also personally provided strategic planning assistance. Id. In exchange, Sterling received a right of first refusal on all book purchases Rivadeneyra and Hoddy purchased in Peru, Trinidad, Jamaica, and Spain. Id. ¶ 40. The agreement also required Rivadeneyra and Hoddy to consult with Sterling's president and chief executive officer before initiating any new strategy or negotiation tactic and before responding to non-routine inquiries from any publisher or distributor. Id. Finally, the agreement contemplated that new

3

overseas purchasing companies would be established, for which Sterling would provide legal, tax, and other due diligence, and from which Sterling would own shares directly or through a holding company or affiliate. Id.

On February 22, 2013, the first complaint was filed. Dkt. No. 1. It was later amended. Dkt. No. 17. Some defendants moved to dismiss the first amended complaint. Dkt. Nos. 24, 36. This Court dismissed the fraud claim as to Therese and Thomas Hoddy, but permitted the other claims to proceed. John Wiley & Sons, Inc. v. Rivadeneyra, No. 13-1085, 2013 WL 6816369, at *9 (D.N.J. Dec. 20, 2013). The complaint was amended three times thereafter, Dkt. Nos. 66, 90, 139,[2] the third time adding as a defendant Sterling, who filed the present motion to dismiss. Dkt. No. 156.

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it

---

[2] The Fourth Amended Complaint was later filed with additional redactions. Dkt. No. 166. The new document did not change the substance of the allegations as to Sterling.

4

provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard: namely, "a party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The circumstances of the fraud must be stated with sufficient particularity to put a defendant on notice of the "precise misconduct with which [it is] charged." Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007).

### III. ANALYSIS

#### A. Fraud

Sterling argues that the Fourth Amended Complaint does not adequately allege fraud as to Sterling. The Court agrees.

Common laud fraud under New Jersey law requires: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 148 N.J. 582, 611 (1997). To satisfy Rule 9(b), a plaintiff must plead facts showing who made a misrepresentation to whom, as well as the general content of the misrepresentation. Lum, 361 F.3d at 224.

Such facts concerning Sterling are found nowhere in the Fourth Amended Complaint. Nothing in the complaint alleges that Sterling itself ever made misrepresentations or otherwise

committed fraud; all the alleged misrepresentations were made by Rivadeneyra, Hoddy, or their affiliated companies. Fourth Am. Compl. ¶¶ 42, 45, 102. Without those allegations, the claim of fraud as to Sterling plainly fails. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 324 (3d Cir. 2010); DiMare v. Metlife Ins. Co., 369 Fed. App'x 324, 329-30 (3d Cir. 2010). The Court therefore dismisses the fraud count as to Sterling.

### B. Civil Conspiracy to Commit Fraud

The civil conspiracy count is adequately alleged. It may proceed.

Like a fraud claim, a claim for conspiracy to defraud must be pled with specificity under Rule 9(b). Kronfeld v. First Jersey Nat'l Bank, 638 F. Supp. 1454, 1468 (D.N.J. 1986) ("In actions alleging a conspiracy to defraud, the particularity requirements of Rule 9(b) must be met."). Under New Jersey law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, a principal element of which is to inflict a wrong against or injury upon another, and an overt act that results in damage." Banco Popular N. Am. v. Gandi, 184 N.J. 161, 177 (2005). The necessary elements of a civil conspiracy are: (1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or a lawful purpose to be achieved by unlawful means; and (4) special damages. Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 414 (3d Cir. 2003).

Plaintiffs have sufficiently alleged facts supporting each element of civil conspiracy. Sterling, Sterling's CEO, Rivadeneyra, Hoddy, and the various other named overseas and domestic companies constitute a combination. These parties entered into an agreement in March 2011, arranging to purchase books at overseas prices for sale in the United States at greater profits. Fourth Am. Compl. ¶ 39. The complaint alleges unlawful means via Rivadeneyra and Hoddy's

6

fraudulent statements that they were purchasing the books for sale overseas. Id. ¶ 3. Sterling was aware that the prices the other defendants paid for these books would not be available absent overseas pricing. Id. ¶ 12. It is a reasonable inference that it was therefore aware that the other defendants would have to commit fraud in order to get overseas pricing on the books it agreed to purchase. Supporting this inference is the fact that other defendants, with Sterling's help, set up sham companies overseas, sham freight forwarders, and sham domestic companies. Damages here are apparent: lost profits in the United States' textbook market due to unauthorized sales. Id. ¶ 46.

Sterling argues that the count for conspiracy to commit fraud should be dismissed for three reasons: (1) Sterling did not commit the fraud itself; (2) there was no unlawful purpose or acts; and (3) the allegations do not adequately state the "who, what, when, where, and how" required to satisfy the heightened pleading standard under Rule 9(b). The Court disagrees.

As to the first argument, it is immaterial whether Sterling itself committed the underlying wrongful act. Though civil conspiracy requires an underlying unlawful act, see Dist. 1199P Health & Welfare Plan v. Janssen, L.P., 784 F. Supp. 2d 508, 533 (D.N.J. 2011), it does not require that each conspirator separately commit that act. "It is enough for liability if [the defendants] understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do their part to further them." Banco Popular N. Am., 184 N.J. at 177; see also Eli Lilly & Co., 23 F. Supp. 2d at 496. This makes common sense. If civil conspiracy required each individual themselves to commit the wrongful act, then it would always be redundant; suing for the underlying wrongful act would accomplish the same purpose. Sterling's first argument therefore fails.

Sterling's second argument relies upon Kirtsaeng v. John Wiley & Sons, Inc., 133 S. Ct. 1351 (2013), for the proposition that selling books domestically that were purchased overseas is

7

not unlawful. That is not an accurate characterization of Kirtsaeng, however. Kirtsaeng addressed whether the first sale doctrine in copyright law, embodied in 17 U.S.C. §§ 109(a), permits resale of copyrighted works sold overseas. Underlying that issue was whether "lawfully made under this title" imposed a geographic limitation or a non-geographic one. The Supreme Court held that it did not impose a geographic limitation, so the first sale doctrine permits resale of legitimately purchased copyrighted works, even those purchased overseas. Kirtsaeng, 133 S. Ct. at 1371. However, nothing in Kirtsaeng addressed or permitted fraud (or conspiracy to commit fraud). The instant motion does not concern whether Sterling committed copyright violations by selling overseas here—if it did, Kirtsaeng would be highly relevant—but whether Sterling conspired to defraud Plaintiffs by falsely representing that books were for overseas sale. Agreeing to pursue a lawful act by unlawful means can render a conspirator liable for civil conspiracy. Banco Popular, 184 N.J. at 177. Here, conspiring to defraud publishers by assisting with the creation and operation of shell companies and fake freight forwarders, while aware that coconspirators must falsely claim that the books will be sold overseas in order to acquire the necessary favorable prices, may constitute an agreement to achieve a lawful act (acquisition of discount books) by unlawful means (fraud).

      The allegations also meet Rule 9(b)'s heightened standard. The who, what, when, where, and how have all been articulated. Sterling, Rivadeneyra, Hoddy, and their various other companies sought to acquire books at discount prices beginning in March 2011 by fraudulently claiming to sell the textbooks overseas, while actually selling them domestically. Plaintiffs have adequately alleged civil conspiracy, so this count may proceed.

## IV. CONCLUSION

For the foregoing reasons, Sterling's motion is **GRANTED IN PART** and **DENIED IN PART**.  An appropriate order accompanies this opinion.

Date: April 11, 2016                              */s Madeline Cox Arleo*
                                                  **MADELINE COX ARLEO**
                                                  **UNITED STATES DISTRICT JUDGE**